**DOLL AMIR & ELEY LLP**
GREGORY L. DOLL (SBN 193205)
gdoll@dollamir.com
L. KATIE FULSHER (SBN 268491)
kfulsher@dollamir.com
1888 Century Park East, Suite 1850
Los Angeles, California 90067
Tel:  310.557.9100
Fax: 310.557.9101

Attorneys for Defendant,
ADRIAN RIVERA

## UNITED STATES DISTRICT COURT

## CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVAJIG, LLC, | Case No. 2:15-CV-01314 JVS (JCx) |
| Plaintiff, Respondent | *Assigned To Courtroom 10C District Judge James V. Selna Magistrate Judge Jacqueline Chooljian* |
| v. | |
| ADRIAN RIVERA, | **DEFENDANT ADRIAN RIVERA'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(B)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Defendant. | |
| | *Filed Concurrently With: Declaration of John R. Fuisz; and [Proposed] Order* |
| | Complaint Filed: 2/24/15 First Amended Complaint Filed: 4/29/15 |
| | **Hearing Information:** |
| | **DATE: Monday, July 13, 2015 TIME: 1:30 pm COURT: 10C** |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on Monday, July 13, 2015, at 1:30 pm, or as soon thereafter as this matter may be heard in the Courtroom of the Honorable Judge James V. Selna United States District Judge, Central District of California, Western Division, located at 312 N. Spring Street, Courtroom 10C, Los Angeles, California 90012, Defendant Adrian Rivera, by and through his counsel, will and does hereby move the Court for an order to dismiss the above-captioned action pursuant to Fed. R. Civ. P. 12(b)(1).

The motion is made following a conference by counsel pursuant to L.R. 7-3 which took place via email multiple email exchanges (including case citation and explanation of legal theories) between April 20th and April 22, 2015.  While the parties were able to agree on other issues which resulted in the Amended Complaint, the parties were not able to reach agreement on the Rule 12(b)(1) issues.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities field herewith, the Supporting Declaration of John Fuisz, the Documentary Evidence in Supports attached to the Declaration of John Fuisz, and all papers, pleadings, documents, arguments of counsel, and other materials presented before or during the hearing on this motion, and any other evidence and argument that Court may consider.

DATED:  June 5, 2015                                    DOLL AMIR & ELEY LLP


By:  /s/ Gregory L. Doll
     Gregory L. Doll
     L. Katie Fulsher
     Attorneys for Defendant,
     ADRIAN RIVERA

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................. 3

    A.   Adrian Rivera ................................................................................. 3

    B.   Technology At Issue ...................................................................... 3

    C.   The '320 Patent ............................................................................. 6

    D.   Procedural History ........................................................................ 8

        1.    ITC Investigation No. 337-TA-929 ................................... 8

        2.    District Court .................................................................... 9

III.  LAW ...................................................................................................... 9

    A.   ITC, Section 337 Investigations .................................................. 9

    B.   Indirect Infringement and Notice ............................................... 10

    C.   Rule 12(b)(1) ............................................................................. 10

IV.  ARGUMENT ....................................................................................... 12

V.   CONCLUSION ................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adenta GmbH v. OrthoArm, Inc.*,
    501 F. 3d 1364 (Fed. Cir. 2007)........................................................... 10

*Already, LLC v. Nike, Inc.*,
    133 S. Ct. 721 (2013) ........................................................... 14

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996)........................................................... 9

*BP Chems. Ltd. v. Union Carbide Corp.*,
    4 F.3d 975 (Fed. Cir. 1993)........................................................... 11

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*,
    527 F.3d 1278 (Fed. Cir. 2008)........................................................... 11

*Danisco U.S. Inc. v. Novozymes A/S*,
    755 F.3d 1325 (Fed. Cir. 2014)........................................................... 11

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)........................................................... 10

*Foster v. Hallco Mfg. Co., Inc.*,
    947 F.2d 469 (Fed. Cir. 1991)........................................................... 14, 15

*Golden v. Zwickler*,
    394 U.S. 103, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969) ................................... 11

*In re Carter*,
    553 F.3d 979 (6th Cir. 2009)........................................................... 10

*Iridium Corp. of Am. V. Semi-Alloys, Inc.*,
    781 F.2d 879 (Fed. Cir. 19785)........................................................... 12

*Lear, Inc. v. Adkins*,
    395 U.S. 653 (1969) ........................................................... 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................... 14

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
    695 F.3d 1322 (Fed. Cir. 2012)........................................................... 15

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ................. 11, 12, 15

*San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*,
    161 F.3d 1347 (Fed. Cir. 1998)........................................................... 9

*Scosche Indus., Inc. v. Visor Gear Inc.*,
    121 F.3d 675 (Fed. Cir. 1999) .................................................................. 9

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
    482 F.3d 1330 (Fed. Cir. 2007) ............................................................. 11

*Waymark Corp. v. Porta Sys., Corp.*,
    245 F.3d 1364 (Fed. Cir. 2001) ............................................................. 10

## **STATUTES**

19 U.S.C. § 1337 ......................................................................................... 9

28 U.S.C. § 1295(a)(6) ............................................................................... 9

28 U.S.C. §2201(a) ................................................................................... 11

## **RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 10

TABLE OF AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Mr. Rivera moves to dismiss this action for lack of subject matter jurisdiction under FRCP 12(b)(1).  Mr. Rivera is the inventor and owner of U.S. Patent No. 8,720,320 (the "'320 patent").  The '320 patent is generally related to a type of reuseable brewing capsule that is used in Keurig K-Cup style machines.  Mr. Rivera and his company, ARM Enterprises, Inc., which manufactures several reuseable brewing capsules, brought suit at the International Trade Commission against several respondents, including Melitta, Inc. for infringement of the '320 patent.  Melitta unilaterally entered into a Consent Order with the ITC.  Pursuant to 19 C.F.R. §210.21, the consent order essentially precludes Melitta from collaterally attacking the consent order in other courts.  JavaJig LLC was not a respondent in the concluded ITC Investigation.  JavaJig supplied reuseable brewing capsules to Melitta, which were sold as Melitta product.  After entry of the Melitta Consent Order, JavaJig has come forward suing Mr. Rivera in this action for a declaration of non-infringement and invalidity over its product – essentially trying to do what Melitta is precluded from doing.  There is no case-or-controversy with JavaJig and jurisdiction does not exist.

The '320 patent is broadly directed to the combination of a reuseable brewing capsule and a Keurig style K-Cup brewer.  Melitta was accused of contributory infringement and inducement to infringe for supplying reuseable brewing capsules based on Melitta's actions and Melitta's product packaging.  Notice of a claim of patent infringement is a prerequisite to alleging contributory or induced infringement. Yet, the Amended Complaint does not allege that notice was ever provided for a JavaJig reuseable brewing capsule, or for a JavaJig coffee machine.  Mr. Rivera has never provided JavaJig with notice of infringement for the purposes of contributory or induced infringement.  There have been no notice letters, no claim charts and no accusations that products sold directly by JavaJig infringe Mr. Rivera's patent.

1

1  Without notice of infringement, there is no cognizable claim for infringement or for a
2  declaratory judgment of non-infringement.

3       Even if there were some aspect of the ITC Investigation that could be imputed
4  to JavaJig, the fact that Melitta voluntarily entered into a consent order precludes
5  there from being a justiciable dispute.   On February 3, 2015, Melitta moved to
6  terminate itself from the Investigation by way of a consent order. At which point,
7  Melitta entered into a consent order stipulation that provided:

8       • an admission that the Commission has in rem jurisdiction, in personam
9         jurisdiction, and subject matter jurisdiction (Exhibit F to Fuisz Declaration
10        (Consent Order Stipulation at ¶2)),

11      • a waiver of all rights to seek judicial review or otherwise challenge or
12        contest the validity of the Consent Order (Exhibit F (Consent Order
13        Stipulation at ¶ 3)),

14      • a statement that Melitta will cooperate with and will not seek to impede by
15        litigation or other means the Commission's efforts to gather information
16        under subpart I of part 210 of Title 19 of the Code of Federal Regulations
17        (Exhibit F (Consent Order Stipulation at ¶ 4)), and

18      • a statement that the enforcement, modification, and revocation of the
19        Consent Order will be carried out pursuant to subpart I of part 210 of Title
20        19 of the Code of Federal Regulations, incorporating by reference the
21        Commission's Rules of Practice and Procedure (Consent Order Stipulation
22        at ¶ 5).

23  Melitta cannot collaterally attack the consent order in the district court.

24       To the extent that JavaJig is somehow trying to stand in Melitta's shoes, only
25  claims 5 and 8 were asserted against Melitta, not all of the claims of the '320 patent.

26       The basis alleged for jurisdiction in the Amended Complaint is "[b]ecause of
27  the assertion by ARM and Rivera that the JavaJig basket infringes the '320 patent,
28  and the efforts by Rivera to enforce that patent against alleged infringers, and

2

Rivera's refusal to give a release as to infringement actions, JavaJig has been put in a position of either continuing its allegedly infringing behavior of manufacturing and selling the JavaJig basket in the United States or abandoning that which is   [sic] claims it has a right to do, unless the respective rights and claims of the parties are determined by the Court."  Amended Complaint at 11.  All of these references are to the ITC Investigation, which was concluded as to Melitta.

If the ITC Investigation can be used to establish jurisdiction, then Melitta, the party who sells the products originally accused of infringement in the ITC Investigation, is a necessary and indispensable party to this action.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Adrian Rivera

Mr. Rivera, a resident of Whittier California, is the inventor and owner of U.S. Patent No. 8,720,320.  CX-1C at Q26, Q28.  Adrian Rivera Maynez Enterprises, Inc. ("ARM Enterprises" or "ARM") is an American company founded by Mr. Rivera, and is currently located at 16141 Heron Avenue, La Mirada, California 90638. Exhibit A to the Fuisz Declaration (CX-1C at Q5, Q9.)[1]  Mr. Rivera has always been and is the 100% owner of ARM. Exhibit A (CX-1C at Q10-Q11.)   ARM is a product-driven company that makes and sells product in the United States. The products that drive the overwhelming majority of ARM's sales, over 90%, are reusable beverage capsules that work with single-serve brewing machines.  *Id.*

### B.     Technology At Issue

Generally, the technology described in the '320 patent relates to beverage capsules that can be used in single-serve beverage brewing machines, such as the Keurig machine, that avoids being punctured by upper and lower needles contained in the brewing chamber of the machine.  Exhibit A (CX-1C at Q30.) The traditional

---

[1]     ITC Investigation is continuing to a hearing on June 15, 2015 against one remaining respondent group.  The ITC uses sworn witness statements for the purposes of introducing direct testimony.  The "CX" citations refer to the witness statements submitted to the ITC and attached to the Fuisz declaration.

capsules that go into Keurig machines are referred to as "K-Cups," which are disposable and not recyclable. Exhibit A (CX-1C at Q32.) Typically, a K-Cup is a capsule that includes brewing material such as ground coffee. Exhibit A (CX-1C at Q33.) The K-Cup usually has a sealed top portion, a plastic bottom and an inner filter suspended near the top. *Id.* Below is a picture of the brewing chamber in a Keurig machine, along with a picture of the brewing chamber with a K-Cup inside:



*Id.*

Brewed liquid is extracted from the K-Cup through the use of the two needles in the brewing chamber. Exhibit A (CX-1C at Q34.) The top needle punctures the top of the disposable capsule and permits an inflow of water into the capsule, whereas the bottom needle punctures the bottom of the capsule, permitting the outflow of brewed material. *Id.* Below is a picture of the brewing chamber showing the needles:

MEMORANUDM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1
2
3
4
5
6
7
8
9



10    Exhibit A (CX-1C at Q34.)

11    The technology in the '320 patent was borne from problems Mr. Rivera
12 observed with respect to the Keurig.  Exhibit A (CX-1C at Q31.)  These problems
13 were environmental and economical.  Due to the popularity of Keurig machines, K-
14 Cups occupy landfills by the billions.  *Id.*  The media has recently reported that K-
15 Cups are creating a significant environmental problem.  Exhibit A (CX-1C at Q32,
16 Q35-Q36,) and Exhibit B to Fuisz Decl. (CX-245.)  Mr. Rivera, however, recognized
17 that this was going to be a problem back in 2007.  Exhibit A (CX-1C at Q35.  The
18 economical problem is that each K-Cup can cost up to a dollar, which greatly impacts
19 the cost to the consumer.  *Id.* at Q32.

20    In working on a solution to the problems posed by K-Cup and the My K-Cup,
21 Mr. Rivera wanted to design a product that allowed the convenience of consumers
22 using their own coffee, in a reusable system that lowers cost to consumers and the
23 impact on the environment.   Mr. Rivera also recognized that, to be used by
24 consumers, the reusable system would need the convenience of a disposable one,
25 meaning it would have to be used without modifying the machine and producing the
26 same quality cup of coffee.  Exhibit A (CX-1C at Q45.)  At the time Mr. Rivera
27 developed the technology in the '320 patent, there were no products on the market
28 that satisfied these criteria.  Exhibit A (CX-1C at Q46.)

The technology in the '320 patent overcomes the problems of K-Cups and the My K-Cup, by providing a reusable beverage brewing capsule where consumers can use their own coffee in the brewing chamber of a single-serve brewing machine, without modifying the brewing chamber of the machine.  Exhibit A (CX-1C at Q45-Q47.)  Not only did Mr. Rivera develop this technology, but the technology was also implemented in Complainants' reusable beverage capsules – the EZ-Cup and Eco-Fill.  Users can place their own coffee in the EZ-Cup or Eco-Fill, and place that capsule inside the brewing chamber without modification. The EZ-Cup and Eco-Fill products are designed to avoid the bottom needle of the brewing chamber, so that the bottom needle does not puncture the bottom of the products.  And the products also accommodate the upper needle through an opening in a cover, which allowed the upper needle to inject water into the products to brew the coffee grounds or other brewing material placed there by the user.

**C.     The '320 Patent**

The '320 patent is entitled "Pod Adapter System for Single Service Beverage Brewers."  Exhibit C to Fuisz Decl. (CX-5 at 1:1-2.)  The embodiments in the '320 patent generally relate to containers that are designed to be disposed within the brewing chamber of single-serve brewing machines.  See, e.g., Exhibit C (CX-5, '320 patent at FIGS. 1A-6.) The container includes a base from which sidewalls extend upwardly with a cover that sealingly engages with the sidewalls.  See, e.g., Exhibit C (CX-5, '320 patent at 4:3-12, 4:55-60.)  The cover includes an opening that allows the upper needle to inject fluid into the container.  *Id.*  The container also includes a passageway for the outflow of fluid from the container, and the base of the container is designed to avoid the lower needle.  *Id.* at 16-39.

An example of an independent claim at issue that include these features is claim 5, which provides:

5. A beverage brewer, comprising:

a brewing chamber;

a container, disposed within the brewing chamber and adapted to hold

brewing material while brewed by a beverage brewer, the

container comprising:

a receptacle configured to receive the brewing material; and

a cover;

wherein the receptacle includes

a base, having an interior surface and an exterior

surface, wherein at least a portion of the base is disposed a

predetermined distance above a bottom surface of the brewing

chamber, and

at least one sidewall extending upwardly from the

interior surface of the base,

wherein the receptacle has at least one passageway

that provides fluid flow from an interior of the receptacle to an

exterior of the receptacle;

wherein the cover is adapted to sealingly engage with a top edge

of the at least one sidewall, the cover including an opening, and

wherein the container is adapted to accept input fluid through the

opening and to provide a corresponding outflow of fluid through

the passageway;

an inlet port, adapted to provide the input fluid to the container; and

a needle-like structure, disposed below the base;

wherein the predetermined distance is selected such that a tip of the

needle-like structure does not penetrate the exterior surface of the

base.

Claim 8 recites: 8. The beverage brewer of claim 5, wherein the container is reusable.

7

**D.    Procedural History**

    **1.    ITC Investigation No. 337-TA-929**

On August 4, 2014, Mr. Rivera and Arm Enterprises, Inc., as Complainants, filed an ITC action alleging a Section 337 violation for infringement of U.S. Patent No. 8,720,320 by Respondents (i) Solofill LLC, (ii) DongGuan Hai Rui Precision Mould Co., Ltd., (iii) Eko Brands, LLC, (iv) Evermuch Technology Co., Ltd., (v) Ever Much Company Ltd., (vi) Melitta USA, Inc., (vii) LBP Mfg. Inc., (viii) LBP Packaging (Shenzhen) Co. Ltd., (ix) Spark Innovators, Corp., (x) B. Marlboros International Ltd. (HK), and (xi) Amazon.com, Inc. Exhibit D to Fuisz Decl.

On August 14, 2014, Complainants filed an Amended Complaint, and filed a supplement to the Amended Complaint on August 22, 2014.  *Id.*

On September 4, 2014, the Commission issued a notice, instituting the 929 Investigation.  *Id.*

On November 19, 2014, the ALJ issued an Initial Determination, granting an unopposed joint motion to terminate the investigation with respect to Respondents LBP Mfg. Inc. and LBP Packaging (Shenzhen) Co. Ltd., based on entry of a consent order.  On December 18, 2014, the Commission determined not to review this Initial Determination.  Exhibit E to Fuisz Decl.

On February 26, 2015, the ALJ issued an Initial Determination granting an unopposed joint motion to terminate the investigation with respect to Respondent Melitta USA, Inc., based on entry of a consent order.   On March 27, 2015, the Commission determined not to review this Initial Determination.  Exhibit F to Fuisz Decl.

The only remaining respondents are Solofill, LLC and DongGuan Hai Rui Precision Mould Co., Ltd.  DongGuan is the manufacturer for Solofill.  The ITC is set to have an evidentiary hearing on June 15, 2015.

### 2. District Court

On February 24, 2015, JavaJig LLC filed a complaint with this court against Mr. Rivera and ARM Enterprises, Inc., asking for a declaratory judgment of non-infringement, invalidity, and unenforceability.

Because the complaint was largely copied from defenses being made by the lone respondent Solofill in the ITC Investigation, some of which had been withdrawn, counsel exchanged some preliminary information. Following that, on April 29, 2015, JavaJig filed an Amended Complaint, withdrawing any claim against ARM Enterprises, Inc. and withdrawing the request for a declaratory judgment of unenforceability.

## III. LAW

### A. ITC, Section 337 Investigations

For alleged infringement through importation, a patentee can file an action in a district court or in the ITC. See 19 U.S.C. § 1337. In the ITC, the patentee may not seek money damages and only gets prospective relief. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996). Section 337 proceedings are *inter partes* actions, initiated by the filing of a complaint, and includes discovery, filing of briefs and motions, and testimony and arguments at a hearing before an administrative law judge. See 19 U.S.C. §1337(c). The ITC follows Title 35 of the United States Code and the case law of the Federal Circuit. See 19 U.S.C. §1337(c). Section 337 patent infringement proceedings as are generally treated as litigation. *See, e.g., San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1358 (Fed. Cir. 1998); *Bio-Tech.,* 80 F.3d at 1563.

The United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction over ITC determinations made under § 337 of the Tariff Act of 1930. 28 U.S.C. § 1295(a)(6).

Consent Orders are interpreted according to general principles of contract law. *Scosche Indus., Inc. v. Visor Gear Inc.,* 121 F.3d 675, 678 (Fed. Cir. 1999). Consent

9

1   orders are also subject to a strong public policy encouraging settlement.  The Federal

2   Circuit noted that:

3   > *Lear* expresses a policy in favor of precluding restrictions on attacks on
    > patent validity. However, the Court in *Lear* did not deal with the
4   > situation where litigation is terminated by a consent decree which by its
    > terms acknowledges a patent's validity. In such a situation, other public
5   > policy considerations come into play, namely, preserving the finality of
    > judgments as well as the strong public policy of encouraging settlements.

6

7   Id. at 474-475.  The Federal Circuit noted that it has "repeatedly expressed the view

8   that there is a strong public interest in settlement of patent litigation."  Id. at 477.

9         **B.      Indirect Infringement and Notice**

10        "[I]nducement requires that the alleged infringer knowingly induced

11  infringement and possessed specific intent to encourage another's infringement."

12  *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citation and

13  internal quotation marks omitted).  Contributory infringement also requires notice.

14  *Waymark Corp. v. Porta Sys., Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001) ("[T]he

15  statutory language in this section [271(f)(2)] does not require an actual combination

16  of the components, but only a showing that the infringer shipped them with the intent

17  that they be combined.").

18        **C.      Rule 12(b)(1)**

19        A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction.

20  Fed. R. Civ. P. 12(b)(1).

21        A challenge to Article III's case or controversy requirement goes to the court's

22  jurisdiction over the case. *In re Carter,* 553 F.3d 979, 984 (6th Cir. 2009).   Because

23  of the issues unique to patent law, the law of the Federal Circuit control, in

24  determining whether an actual case or controversy exists to support an action for a

25  declaratory judgment of non-infringement and/or invalidity of a patent. *Adenta GmbH*

26  *v. OrthoArm, Inc.,* 501 F. 3d 1364, 1368 (Fed. Cir. 2007).

27

28

Jurisdiction focuses on the evidence at the time of filing of the complaint, and the continuation of that state. *Danisco U.S. Inc. v. Novozymes A/S,* 755 F.3d 1325, 1329 (Fed. Cir. 2014).

The Declaratory Judgment Act provides, in part, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).    The "actual controversy" requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.,* 482 F.3d 1330, 1338 (Fed. Cir. 2007).   "The requirement of an actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory rulings." *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed. Cir. 1993); *see also Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.,* 527 F.3d 1278, 1291 (Fed. Cir. 2008).

The existence of a case or controversy is highly dependent upon the particular facts at issue. The difference between an actual controversy and an abstract question in a given case "is necessarily one of degree," and must be ascertained by examining the totality of the circumstances to determine whether there is a "substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S. Ct. 956, 959-60, 22 L. Ed. 2d 113 (1969).  In *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007), the Supreme Court reiterated that the proper inquiry "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 127, 127 S. Ct. at 771.

Although there is no bright line rule to determine whether a declaratory judgment action satisfies Article III's case-or-controversy requirements, the dispute

must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune,* 549 U.S. at 127 (quoting *Aetna Life,* 300 U.S. at 240–41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (*quoting Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

## IV.   ARGUMENT

JavaJig is required to come forward with evidence to prove that jurisdiction existed at the time of filing and continues to exist.  It has not, nor can it.

Mr. Rivera and ARM filed an ITC Investigation against Melitta, not JavaJig, and only for infringement of claims 5 and 8 of the '320 patent.  The products at issue were products <u>sold</u> by Melitta under the Melitta name and in Melitta packaging.  At no point have products sold directly by JavaJig been accused of infringement, nor has notice, required under 35 U.S.C. Section 271(b) and (c), have been issued to JavaJig. JavaJig has no reference whatsoever that products, which includes coffee makers, it sells have ever been accused to infringe the '320 patent.

Prior litigation between Mr. Rivera and other parties is not relevant to whether there exists a justiciable controversy between JavaJig and Mr. Rivera.  *See Iridium Corp. of Am. V. Semi-Alloys, Inc.,* 781 F.2d 879, 883 (Fed. Cir. 19785).

Rather, JavaJig attempts to allege, without at factual support, that assertions of infringement were made during the ITC investigation with Melitta.   JavaJig's products were not identified in the ITC Complaint.  Exhibit G to Fuisz Decl.  Only claims 5 and 8 were asserted against Melitta.  *Id.*  The ITC requires claims to be specifically alleged and added to the Investigation, so only claims 5 and 8 were at issue with respect to Melitta.  Discovery at the ITC is governed by the scope of the

title of the Investigation, not the patent claims.[2]   Yet, JavaJig alleges that "[i]n discussions with Melitta and JavaJig counsel concerning that proceeding, ARM and Rivera asserted, though counsel, that the JavaJig basket infringes at least claims 5 and 8 of the '320 patent, and ARM and Rivera served discovery requests within the ITC action, regarding the JavaJig basket." Amended Complaint at Para. 9 (Doc. 22). While discovery was sought on all products falling within the scope of the investigation sold by Melitta, that is not to be inferred as a accusation of infringement.

Moreover, even if taken as true, the allegation relates to <u>Melitta's product</u>. Paragraph 6 of the Amended Complaint acknowledges that there are two different products and states:

> 6. JavaJig is the manufacturer of the JavaJig beverage filter basket system ("JavaJig basket"), which is sold throughout the United States by JavaJig and by JavaJig's reseller, Melitta USA, Inc ("Melitta"). JavaJig also sells the JavaJig Coffee Maker, a brewing machine in which the JavaJig basket can be used.

Amended Complaint at Para. 6 (doc. 22).  To the extent this is a declaratory judgment concerning the JavaJig products sold directly by JavaJig under the JavaJig name, those products were not at issue at the ITC.  Any discovery or concerns expressed during the ITC case related to Melitta's products.  At no point in time has Mr. Rivera provided notice of infringement to JavaJig, concerning products sold directly by JavaJig.

JavaJig makes reference to a JavaJig coffee maker.  But the ITC action only dealt with Keurig style coffee makers.  Melitta does not sell a coffee maker that was accused of infringement in the ITC investigation.

---

[2]     Commission Rule 210.10(b) states that the notice of investigation issued by the Commission "will define the scope of the investigation."  *See, e.g., Certain Flash Memory Chips and Products Containing Same,* Inv. No. 337-TA-735, Order No. 11, at 2 (Dec. 8, 2010).  Administrative law judges have consistently held that the scope of discovery "may be broad enough to encompass information about products beyond those specifically identified in the complaint (e.g., by name or model number) because the scope of investigation dictates the scope of discovery." *Id.* (*citing Certain Wireless Communications Equipment, Articles Therein, and Products Containing the Same,* Inv. No. 337-TA-577, Order No. 14 at 1 (Jan. 11, 2007).

13

To the extent that the declaratory judgment seeks to collaterally attack the consent order for the Melitta products, there is likewise no jurisdiction, as the consent order cannot be used to justify jurisdiction.  As a preliminary matter, by pleading that all JavaJig products are domestically manufactured (Amended Complaint at Para. 10) there is no injury-in-fact associated with the Consent Order.  There must be an actual or imminent injury.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 n.2 (1992).  There is none pled in the Amended Complaint.

The past grievance must be continuing – which it is not, because of the consent order.   In *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013), the Supreme Court addressed an analogous situation. In *Already*, the issue was whether a covenant not to sue combined with a lack of sufficient or concrete plans to violate the agreement, renders the dispute moot. Id at 728. As the Supreme Court noted "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id* at 727 (*citing Alvarez v. Smith,* 558 U. S. 87, 93 (2009)). The Consent Order was a contract, voluntarily entered into by Melitta with the ITC that resolved the dispute and cannot be the basis for jurisdiction for JavaJig.

Policy issues favor respect for settlements, and weighs against a collateral attack of the consent order Melitta entered into with the ITC.  Termination by way of a consent order raises policy issues and moots the grievance between Melitta and Mr. Rivera.   In *Foster v. Hallco Mfg. Co., Inc.,* 947 F.2d 469 (Fed. Cir. 1991) the Federal Circuit stated: "In [the situation where litigation is terminated by a consent decree which acknowledges a patent's validity], other public policy considerations come into play, namely, preserving the finality of judgments as well as the strong public policy of encouraging settlements." Id. at  474-75.  *Foster* expressly distinguishes between contractual prohibitions as discussed in *MedImmune Inc. v. Genentech, Inc.,* 549 U.S.

118 (2007), and consent judgments.    *MedImmune* expressly related to a "license agreement," not a consent order. Id. at 137.

In *Foster*, the parties terminated a previous litigation by way of a consent judgment that precluded a challenge to validity.   *Foster*, 947 F.2d, at 472.   In a second-filed litigation, the issue arose whether Foster, the accused infringer, was estopped from asserting an invalidity defense because of the prior consent judgment. The issue was precluded, albeit under claim preclusion, which the Federal Circuit discussed in conjunction with the "case or controversy" requirement. Id. at 479. The Federal Circuit distinguished the issue in *Lear, Inc. v. Adkins,* 395 U.S. 653 (1969), which allowed a licensee to challenge validity, on the basis that:

> Lear expresses a policy in favor of precluding restrictions on attacks on patent validity. However, the Court in Lear did not deal with the situation where litigation is terminated by a consent decree which by its terms acknowledges a patent's validity. In such a situation, other public policy considerations come into play, namely, preserving the finality of judgments as well as the strong public policy of encouraging settlements.

Id. at 474-475.  The Federal Circuit noted that it has "repeatedly expressed the view that there is a strong public interest in settlement of patent litigation." Id. at 477.

Having failed to allege non-compliance with the Consent Order, JavaJig cannot use that same Consent Order to establish the immediacy requirement, which requires that there is an immediate impact on Melitta and that the lapse of time creates uncertainty. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1328-31 (Fed. Cir. 2012) (failing to allege facts that it intends to infringe makes the alleged harm "too remote and speculative to support the exercise of declaratory judgment jurisdiction.").

/ / /

/ / /

/ / /

/ / /

15

# V.    CONCLUSION

For the foregoing reasons, Defendant Adrian Rivera respectfully requests that the Court grants this Motion, and dismiss the instant Amended Complaint for lack of subject matter jurisdiction.

DATED:  June 5, 2015                    DOLL AMIR & ELEY LLP


                                        By:  /s/ Gregory L. Doll
                                           Gregory L. Doll
                                           L. Katie Fulsher
                                           Attorneys for Defendant,
                                           ADRIAN RIVERA

MEMORANUDM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS